UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**KESLER ASSOCIATES, INC.,**

    Plaintiff,

                                                               **Case No. 10-CV-13390**

v.

                                                               **HONORABLE DENISE PAGE HOOD**

**WELLMAN PLASTICS RECYCLING, LLC,**

    Defendant.

_____/

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

       This matter is before the Court on Defendant's Motion for Summary Judgment **[Docket No. 12, filed on March 8, 2011]**.  Plaintiff responded on March 29, 2011 **[Docket No. 14]**.  Defendant replied on April 5, 2011 **[Docket No. 17]**.

**II.    STATEMENT OF FACTS**

       On October 22, 2008, a private equity firm, Johnsonville Acquisition Company, LLC ("JAC"), bought certain assets of a company named Wellman Inc. ("Wellman") out of bankruptcy.  Def.'s Mot. for Summ. J. Ex. 1.  JAC then named the new company Wellman Plastics Recycling LLC ("WPR").  This case is a breach of contract matter in which Plaintiff, Kesler Associates ("Kesler"), alleges that it is owed commissions for services rendered prior to termination of the business relationship between Plaintiff and the Defendant, WPR.  Defendant argues that an accord and satisfaction between the parties resulting from a check tendered from Defendant to Plaintiff extinguished all of Plaintiff's claims against Defendant.

       Kesler is a small, three-person sales company that entered into a contract with Wellman

in 1971 to perform sales functions in Michigan and other nearby states from 1971 until Wellman went bankrupt. As a result of JAC's asset purchase with the approval of the Bankruptcy Court, all claims which existed as of October 21, 2008 were terminated as to WPR and transferred by operation of law to the proceeds of the sale which were part of the Bankruptcy Estate. *Id*. at Ex. 2, para. 6.

Though Defendant did not assume the original Kesler contract, or any of its obligations with Wellman, the bankrupt company, Defendant and Plaintiff attempted to negotiate a new agreement with Plaintiff on specific accounts. In the interim, Plaintiff was allowed to continue its sales activities on a month-to-month basis during the negotiation period with Defendant. During this interim period, Plaintiff was also compensated with sales commissions based upon Kesler's prior commission rate with Wellman. The goal was to eventually reach a new agreement that would allow both parties to continue their business relationship.

In May of 2009, Defendant submitted a proposed agreement in writing and requested that Robert Gehle, the owner of Kesler, enter into a formal agreement reflecting an account-specific payment structure. *Id*. at Ex. 5. There was considerable discussion back and forth between the parties, along with considerable delays resulting from Mr. Gehle's health problems. On December 1, 2009, WPR provided Kesler with 90-day notice that the month-to-month relationship would end if a new agreement was not reached. *Id*. at Ex. 6. Despite continuing efforts to reach an agreement, including a visit from William Fotsch, WPR's Vice President of Sales and Marketing, in which a proposed list of accounts was presented to Kesler, no new agreement was reached. *Id*. at Ex. 4-15. On April 23, 2010, Defendant sent Mr. Gehle a certified letter terminating the business relationship between Plaintiff and Defendant. *Id*. at Ex.

15.

      Defendant was served with Plaintiff's first complaint on September 20, 2010. On September 22, 2010, Defendant's controller, Sue Windham, received an email request from Carrie Mitter, an employee of Kesler. *Id*. at Ex. 16. Ms. Mitter sought review of numerous accounts Plaintiff showed "as open and not having been paid commission." *Id*. On October 27, 2010, Ms. Windham forwarded a response to the email address of the President of Kesler, attaching a worksheet that divided the invoices into four different categories, one of which Defendant was willing to pay and three of which Defendant was not willing to pay. *Id*. at Ex. 20. The email prefaces Defendant's willingness to pay as conditioned on an agreement between the parties as to the accounting. *Id*. After reviewing the worksheets, Plaintiff Kesler requested payment of the commission check. *Id*. at Ex. 21. As a result, Defendant drafted a check in the specified amount made payable to Kesler. *Id*. at Ex. 22. The description line on the receipt attached to the check read "FULL AND FINAL PAYMENT" in capital letters. *Id*. The check was endorsed by Ms. Miter and deposited into a Kesler account. *Id*. at Ex. 23.

      After being notified that there had been an accord and satisfaction, Defendant's counsel contacted Plaintiff's counsel to inform him of the resolution. After contacting his client, Plaintiff's counsel advised Defendant's counsel that the full and final payment had been deposited without Mr. Kesler's knowledge. Despite knowledge of Defendant's belief that there was an accord and satisfaction, Kesler did not refund the check.

### III.   APPLICABLE LAW

#### A.   Standard for Summary Judgment

Summary judgment is appropriate when there are no genuine issues of material fact in

dispute and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party that fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In such a case, "there can be no genuine issue of material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323. In addition, the "mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B. Accord and Satisfaction

Under Michigan law, an "'accord' is an agreement between parties to give, and accept, in settlement of a claim or previous agreement, something other than that which is claimed to be due." *David v. ANA Television Network, Inc.*, 997 F.Supp. 850, 855 (E.D. Mich. 1998, *aff'd in part, rev'd in part on other grounds*, 208 F.3d 213 (6th Cir. 2000). In order for an agreement to constitute an accord, there must be a "meeting of the minds of those who enter into it." *Hoerstman Gen. Contracting, Inc. v. Hahn*, 474 Mich 66, 70; 711 N.W.2d 340, 344 (Mich. 2006). A meeting of the minds is "implied as a matter of law by the acceptance of the offer." *Id*. at 71. A satisfaction is "the discharge of the debt occurring after acceptance of the accord." *Id*. A satisfaction operates to discharge the prior debt "by a performance different from that which is

claimed due, and acceptance of such substituted performance." *Baum's Dairy Farms*, 996 F.Supp. 705, 711 (E.D. Mich. 1998). The affirmative defense of accord and satisfaction is grounded in principles of contract law. *Hoerstman*, 474 Mich. at 70. Whether an accord and satisfaction exists "may be decided as a question of law if the facts of the case are undisputed and not open to opposing inferences." *Id*.

When an accord and satisfaction is at issue in the context of a negotiable instrument, such as a check, MCL § 440.3311 governs as the UCC has abrogated the applicable common law. Mich. Comp. Laws. Ann. § 440.3311 (West 2011); *Hoerstman*, 474 Mich. at 75.

> MCL § 440.3311 provides that:
>
> (1) If a person against whom a claim is asserted proves that (i) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, (ii) the amount of the claim was unliquidated or subject to a bona fide dispute, and (iii) the claimant obtained payment of the instrument, the following subsections apply.
>
> (2) Unless subsection (3) applies, the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim.
>
> (3) Subject to subsection (4), a claim is not discharged under subsection (2) if either of the following applies:
>
> (a) The claimant, if an organization, proves that (i) within a reasonable time before the tender, the claimant sent a conspicuous statement to the person against whom the claim is asserted that communications concerning disputed debts, including an instrument tendered as full satisfaction of a debt, are to be sent to a designated person, office, or place, and (ii) the instrument or accompanying communication was not received by that designated person, office, or place.
>
> (b) The claimant, whether or not an organization, proves that within 90 days after payment of the instrument, the claimant tendered repayment of the amount of the instrument to the person against whom the claim is asserted. This subdivision does not apply if the claimant is an organization

>that sent a statement complying with subdivision (a)(i).

>(4) A claim is discharged if the person against whom the claim is asserted proves that within a reasonable time before collection of the instrument was initiated, the claimant, or an agent of the claimant having direct responsibility with respect to the disputed obligation, knew that the instrument was tendered in full satisfaction of the claim.

Mich. Comp. Laws. Ann. § 440.3311 (West 2011).

## IV.  ANALYSIS

### A. Good Faith Tender in Full Satisfaction of the Account

The first step in determining whether there is an accord and satisfaction is to determine whether Defendant "in good faith tendered an instrument to the claimant in full satisfaction of the claim." Mich. Comp. Laws. Ann. § 440.3311(1)(i) (West 2011). Good faith means "honesty in fact and the observance of reasonable commercial standards of fair dealing." *Hoerstman*, 474 Mich. at 76.

Plaintiff argues that Sue Windham could not have possibly tendered the check in good faith. Pl.'s Answer to Def.'s Mot. for Summ. J. at 6. Plaintiff also alleges that it is unlikely Sue Windham even knew the details of the lawsuit. *Id*. Plaintiff supports its claim by noting the lack of an affidavit from Sue Windham as evidence of her lack of knowledge.

Plaintiff's arguments are not dispositive, as an admission by Defendant that the amount of the check was admittedly due to Plaintiff is not inconsistent with a good faith tender in full satisfaction of the claim. Defendant's acknowledgment that commissions are owed to Plaintiff does not preclude Defendant from disputing the amount owed and offering an accord in an amount Defendant believes it owes to Plaintiff. Defendant has since submitted an affidavit from Sue Windham, WPR's controller, stating that at the time the check was sent by Sue Windham,

WPR intended the payment as full satisfaction of all claims against WPR by Kesler. Aff. of Sue Windham, Def.'s Reply in Supp. of Mot. for Summ. J.

There is some evidence in the record that shows Defendant acted in good faith. First, Defendant conducted a full review of the disputed accounts as requested by Plaintiff. Second, Defendant provided Plaintiff with a spreadsheet breaking down their categorization of the invoices, while also giving Plaintiff a chance to review the breakdown and dispute the categorizations. Lastly, Defendant's counsel specifically advised Plaintiff's counsel within the 90 day grace period that an accord and satisfaction had been entered, giving Kesler the power to rectify the error if they did not want to be bound by the accord and satisfaction.

Plaintiff has failed to sufficiently establish that Defendant acted in bad faith in tendering payment in full satisfaction of the account to warrant summary judgment. Given that Defendant's tender was made after allowing Plaintiff a chance to dispute the accounting, Defendant's tender may have been made in good faith as required by MCL § 440.3311. Summary judgment as to whether the tender was made in good faith is not appropriate.

### B. Amount of Claim Unliquidated and Subject to Dispute

The second prong for proving the existence of an accord and satisfaction is that the claim amount be "unliquidated or subject to a bona fide dispute." Mich. Comp. Laws. Ann. § 440.3311(1)(ii) (West 2011). "The unliquidated nature of the claim allows for consideration on both sides and a meeting of the minds" such that the "compromise agreement of one party bec[omes] the supporting consideration for that of the other." *Hoerstman*, 474 Mich. at 77, n.10.

Plaintiff argues that the amount paid was liquidated. Pl.'s Answer to Def.'s Mot. for Summ. J. at 7. Plaintiff claims the amount was liquidated since it was for the exact amount

admitted as owed by Defendant, and that Defendant only had to "add up the invoices." *Id*. Plaintiff also argues that since Defendant admitted owing the amount paid to Plaintiff, there was no consideration and no meeting of the minds, elements necessary for an agreement to constitute an accord. *Id*. at 7-8. Lastly, Plaintiff argues that the payment Defendant made to Plaintiff was for bookkeeping mistakes that led to overlooked commissions not paid to Plaintiff, and not for the commissions sought in the pending litigation between the parties. *Id*. at 3.

Defendant did not simply "add up the invoices" to determine the amount in controversy. Plaintiff's September 22, 2010 request required the Defendant to fully review the contested invoices. After Defendant's review, the invoices were divided into four groups, only one of which Defendant was willing to pay. Plaintiff's argument that there was no meeting of the minds is misguided. A meeting of the minds is not determined by the subjective intent of the parties involved, but by the objective actions of the parties, and a meeting of the minds is "implied as a matter of law by the acceptance of the offer." *Hoerstman*, 474 Mich. at 71. In the instant case, Plaintiff was given an opportunity to review the accounting prepared by Defendant, and a chance to object or dispute the categorizations made by Defendant. Instead of disputing the accounting after reviewing Defendant's spreadsheet, Plaintiff indicated its agreement with the accounting by requesting and accepting payment, evidence indicative of a meeting of the minds.

Plaintiff's argument that there was no consideration also fails, as the agreement of Plaintiff to the amount in controversy determined for the open invoices becomes the supporting consideration. Plaintiff's assent to Defendant's accounting does not mean that the amount was liquidated and not in dispute. Prior to Defendant's review, WPR did not know the exact amount

of the claimed commissions. In addition, Kesler also did not know the amount they were claiming prior to the accounting by Sue Windham. It was the accounting that determined the amounts in controversy, and Plaintiff had an opportunity to dispute the accounting.

Although Plaintiff alleges that the payment made by Defendant was not for the commissions contested in this litigation but for bookkeeping errors, Sue Windham's affidavit states that at the time she submitted the check, WPR intended the payment as full satisfaction of all claims against WPR by Kesler. *See* Aff. of Sue Windham, Ex. 1 to Def.'s Reply in Supp. of Mot. for Summ. J. Even if Plaintiff believed that the check was not meant by Defendant as final satisfaction of the pending litigation, Plaintiff's counsel was ultimately notified of the accord and satisfaction by Defendant's counsel within the 90 day window that MCL § 440.3311 provides. Mich. Comp. Laws. Ann. § 440.3311(3)(b) (West 2011). This window allows parties that are mistakenly bound by an accord and satisfaction to refund the payment in exchange for being released from the requirements of the accord and satisfaction. *Id*. No refund was ever made by the Plaintiff, despite knowledge that Defendant viewed the payment as full satisfaction of the claims between the parties.

### C. Claimant Deposited the Check

The third step for an accord and satisfaction requires proof that "the claimant obtained payment of the instrument." Mich. Comp. Laws. Ann. § 440.3311(1)(iii) (West 2011). It is undisputed that Plaintiff obtained payment via a check numbered 0005084111. Pl.'s Answer to Def.'s Mot. for Summ. J. at 3. The check was subsequently deposited by Carrie Mitter into a Kesler bank account in November of 2009. *Id*. Plaintiff has not demonstrated that a genuine issue of material fact exists as to whether Plaintiff deposited the check.

### D.  Instrument Contains a Conspicuous Statement That Instrument is Tendered in Full Satisfaction of the Claim

After the first three requirements of MCL § 440.3311 are met, "the question becomes whether the claim was discharged." *Hoerstman*, 474 Mich. at 78.  There are two ways to discharge a claim, outlined in MCL § 440.3311(2) and MCL § 440.3311(4). MCL § 440.3311(2) states that a "claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim."  Mich. Comp. Laws. Ann. § 440.3311(2) (West 2011).  A clause "is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it," and a "printed heading in capitals . . . is conspicuous."  Mich. Comp. Laws. Ann. § 440.1201(10) (West 2011).  Comment 4 of MCL § 440.3311 states that "[i]f the claimant can reasonably be expected to examine the check, almost any statement on the check should be noticed and is therefore conspicuous."  Mich. Comp. Laws. Ann. § 440.3311, cmt. 4 (West 2011).

Plaintiff argues that while the check stub contained the clause "FULL AND FINAL PAYMENT" in capital letters, it was unclear as to what "full and final payment" referred.  Pl.'s Answer to Def.'s Mot. for Summ. J. at 7.  Plaintiff then alleges that it is clear under the facts of the case that there was no intent to have the language apply to the pending litigation and that, at a minimum, there exists a question of fact.  *Id*.

In *Hoerstman,* the court found that the words "final payment" on the comment line of the check in capital letters was conspicuous.  *Hoerstman*, 474 Mich. at 79.  The *Hoerstman* court found additionally that the letter accompanying the check also contained a conspicuous

statement that the check meant to discharge the claim. *Id*. In this case, although the clause "FULL AND FINAL PAYMENT" was conspicuously placed on the check stub, the meaning that a party may attach to that clause based upon the related email correspondence is not conspicuous. In Sue Windham's email to Plaintiff, Ms. Windham describes the fourth category of claims, the category that Defendant was willing to pay Plaintiff for, as follows: "Invoices where we have been paid and owe you your commission." Pl.'s Answer to Def.'s Mot. for Summ. J., Ex. 5. From this statement, one plausible reading is that Defendant is paying Plaintiff for all invoices for which Defendant is owed a commission, which is the subject matter of the pending litigation. The same email contains a statement regarding the fourth category of claims, which reads "we don't know why these ten invoices were missed in our files, and consequently in our payments to you. Possibly . . . it is simply a matter of book keeping mistakes." *Id*. From this statement, it appears that the Defendant's check payment was made as a result of Defendant's bookkeeping errors, which are not the subject matter of the pending litigation. Taking the email as a whole, along with the description on the check stub, there is a genuine issue of material fact as to whether Defendant is paying Plaintiff for bookkeeping mistakes that led to missed commission fees, or if the payment is being tendered in full satisfaction of the pending litigation. As a genuine issue of material fact exists, summary judgment is not appropriate in regards to this issue, and Plaintiff's claim is not discharged by means of a conspicuous statement noting that the instrument was tendered as full satisfaction of the claim.

### E. Claimant or Agent Having Direct Responsibility Knew Instrument was Tendered in Full Satisfaction of Claim

The second method to discharge a claim, articulated in MCL § 440.3311(4) states "a claim is discharged if the person against whom the claim is asserted proves that within a

reasonable time before collection of the instrument was initiated, the claimant, or an agent of the claimant having direct responsibility with respect to the disputed obligation, knew that the instrument was tendered in full satisfaction of the claim." Mich. Comp. Laws. Ann. § 440.3311(4) (West 2011).

Plaintiff claims that Mr. Gehle, the owner of Kesler, who was ill, did not see Defendant's check or check stub. Pl.'s Answer to Def.'s Mot. for Summ. J. at 3. Plaintiff alleges that Carrie Mitter noticed the statement "FULL AND FINAL PAYMENT" on the check stub, but understood the clause to mean full and final payment for the invoices identified by Sue Windham as overlooked, and not for the claims in dispute in the pending litigation. *Id*. Plaintiff contends that the pending litigation was never discussed between Sue Windham and Carrie Mitter at any time, and that discussion was limited to an inquiry relating to past due commissions rather than future commissions. *Id*. at 4. Plaintiff states that Mr. Gehle did not discuss the details of the pending lawsuit with Carrie Mitter except that the pending litigation was regarding a dispute over future commissions. Aff. of Carrie Mitter, Pl.'s Answer to Def.'s Mot. for Summ. J., Ex. 8. Plaintiff also did not authorize Carrie Mitter to enter into any type of settlement concerning the pending litigation. Aff. of Robert Gehle, Pl.'s Answer to Def.'s Mot. for Summ. J., Ex. 9.

Defendant argues that the email correspondence between Carrie Mitter and Sue Windham clearly delineates the understanding of the parties. Def.'s Mot. for Summ. J. at 15. Defendant makes several assumptions. First, Defendant assumes that Carrie Mitter is an authorized agent of Kesler. *Id*. Second, Defendant assumes that Carrie Mitter understood the intent of the payment to be for the full satisfaction of the pending litigation. Third, Defendant assumes that Mr. Gehle had knowledge of intent of the payment because Sue Windham's email was sent to

Mr. Gehle's email address. Def.'s Reply in Supp. of Mot. for Summ. J. at 2. From these facts, Defendant concludes that Plaintiff deposited the check knowing Defendant tendered the instrument in full satisfaction of the pending litigation. Def.'s Mot. for Summ. J. at 15.

Defendant offers no evidence to support its assumptions. First, there exists evidence in the record which states that Ms. Mitter had no authority to enter into any type of settlement concerning the pending litigation. Aff. of Robert Gehle, Pl.'s Answer to Def.'s Mot. for Summ. J., Ex. 9. Defendant has presented no evidence that shows Carrie Mitter was an authorized Kesler agent with direct responsibility for settling claims on behalf of the Plaintiff, although Defendant alleges that Carrie Mitter took charge of her father's company while he was ill. Def.'s Reply in Supp. of Mot. for Summ. J. at 2. Second, Defendant's claims and statements regarding the intent of the payment were not conspicuous. A reasonable party could have interpreted Defendant's statements as referring either to past due commissions, which are not the subject of the pending litigation, or future commissions, which are the subject matter of litigation. Third, in an affidavit Mr. Gehle states that he was not involved in Carrie Mitter's communications to Sue Windham, that he was not aware of any type of settlement with WPR, and that his understanding of the payment was that it was for commissions on invoices that were previously overlooked by WPR. Aff. of Robert Gehle, Pl.'s Answer to Def.'s Mot. for Summ. J., Ex. 9.

Since there is a genuine issue of material fact as to whether Plaintiff or its agent knew that the instrument was tendered in full satisfaction of the claim within a reasonable time before collection of the instruments, summary judgment on this issue is inappropriate, and Plaintiff's claim is not discharged under MCL § 440.3311(4).

## V. CONCLUSION

Plaintiff has failed to show material fact in regards to the first three requirements of MCL § 440.3311. However, Plaintiff has demonstrated the existence of genuine issues of material fact as to whether Plaintiff's claim was discharged under the two permissible methods under the statute, and so summary judgment is denied.

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment **[Docket No 12, filed on March 8, 2011]** is **DENIED.**

s/Denise Page Hood<br>
Denise Page Hood<br>
United States District Judge

Dated: August 18, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 18, 2011, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry<br>
Case Manager